UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 3:18-cr-00047-LRH-CBC |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| ERIC ROMERO-LOBATO, | |
| Defendant. | |

Following a declaration of a mistrial on January 6, 2020, the Court ordered defendant Eric Romero-Lobato to file a memorandum regarding the admissibility of his proposed derivative citizenship defense. He did so (ECF No. 94), to which the government responded (ECF No. 99) and defendant replied (ECF No. 104). Defendant subsequently filed a motion to dismiss the charge against him with prejudice based on double jeopardy grounds (ECF No. 96), to which the government responded (ECF No. 102) and defendant replied (ECF No. 110). Currently scheduled for February 5, 2020, is an evidentiary hearing to allow defendant to present evidence regarding his proposed derivative citizenship defense. For the reasons stated below, the Court denies defendant's motion to dismiss and reserves ruling on defendant's proposed derivative citizenship defense until after the evidentiary hearing or until this matter is resolved on appeal.

**I. Background**

This case has been pending for approximately twenty months and had previously been set for trial on May 21, 2019. It was continued to January 6, 2020, to follow two other jury trials involving the same defendant on seven charges including armed carjacking and attempted armed

1

robbery. The juries found defendant guilty on those charges in trials held in July and November of 2019. His sentencings on those convictions have been continued over pending resolution of this third case.

Trial was scheduled to begin at 8:30 am on January 6, 2020. (ECF No. 67). Defendant is facing a charge under a single count indictment for illegal reentry by a previously deported alien, in violation of 8 U.S.C. §1326(a). (ECF No. 1). At the pretrial conference on December 19, 2019, counsel for defendant represented to the Court that the trial would last "a day [or] a day and a half." (ECF No. 101 at 2). Counsel for the United States stated that she believed that all the jury instructions would be submitted jointly; counsel for defendant did not disagree with this statement or indicate that they were considering instructions that would need to be briefed or argued in court. (*Id*. at 3–4). Pursuant to the Court's pretrial order, the Court had set a pretrial document deadline for instructions and exhibits of December 31, 2019. (ECF No. 65). At calendar call, the Court modified the deadline to noon on Friday, January 3, 2020. (ECF No. 101 at 3). Although it is unusual for the undersigned to start trial on a Monday or to allow counsel to submit documents the Friday before trial, the undersigned agreed to that schedule based in part upon the representations made by defense counsel. The undersigned's decision was premised on the impression created by counsel that the trial would be straightforward and without controversy as to proposed jury instructions or evidentiary matters.

Unfortunately, this is not what happened. On January 3, 2020, defense counsel timely filed several trial documents before the noon deadline; these included an exhibit list and proposed jury instructions. (ECF Nos. 73, 74). But at approximately 3:30 pm that Friday afternoon, in violation of the Court's pretrial and bench orders, defense counsel filed three additional jury instructions ex parte and under seal which went to derivative citizenship and acquired citizenship along with a motion to seal the instructions. (ECF Nos. 81, 82). At 4:23 pm, defense counsel filed a motion in limine to preclude the government from referencing defendant's prior criminal convictions. (ECF No. 84). The timing of this motion in limine was in violation of Federal Rule of Criminal Procedure 47(c), which mandates that any motion must be filed at least seven days before the hearing date unless the Court sets a different date, which it did not. Finally, at approximately 5:42 pm, defense

2

counsel filed an untimely new exhibit list. (ECF No. 85). As is evident by their filing times, all these filings were untimely and in violation of court order. While court was in session the following court day on January 6 and jury selection was underway, defense counsel then filed a second amended exhibit list at approximately 8:59 am. (ECF No. 89). This exhibit list was a substantial revision to the prior exhibit list, adding documents related to defendant's 1996 removal proceedings and deportation. Defense counsel then filed an untimely third amended exhibit list at approximately 11:05 am while the Court was nearing final jury selection. (ECF No. 90). These untimely exhibit lists were filed shortly before jurors were to be sworn and opening arguments were to begin.

As provided in the Court's pretrial order and as extended at calendar call to noon on January 3, 2020, the parties were "to file" and "serve upon all other parties" their complete exhibit lists containing all exhibits intended to be used at trial and all jury instructions "upon which counsel have agreed and all jury instructions upon which they have not agreed." (ECF Nos. 65, 67). Relevant here, the pretrial order requires that both the government and the defendant file their exhibit lists and proposed jury instructions no later than the noon deadline. The pretrial order also notes that pursuant to this district's local rules, the Court will consider the imposition of sanctions against any attorney who "fails to timely comply with the provisions of [the pretrial order]" or who "fails to timely comply with any other order than schedules deadlines for trial preparation." (ECF No. 65 at 5).

Prior to jury selection on that first morning of the projected two-day trial, the Court ruled on several matters, some of which had been newly raised by the defense's untimely filings. First, the Court held that the government could introduce defendant's 2007 deportation and related documents into evidence because they are relevant and probative to the issues of identity, alienage, and intent to enter the United States free from official restraint. (ECF No. 93 at 10). Second, the Court granted the government's request to introduce evidence of defendant's prior convictions for unlawful reentry because the government must prove that defendant had been previously deported as a necessary component of its case. *See, e.g., U.S. v. Cruz-Escoto*, 476 F.3d 1081, 1088 (9th Cir. 2007). As to defendant's untimely motion to seal certain jury instructions, the Court noted that it

was entirely improper for a party to submit proposed jury instructions to the Court without also disclosing them to the opposition. (ECF No. 93 at 11). Such a tactic is a clear violation of Federal Rule of Criminal Procedure 30 – "[w]hen the request [for jury instructions] is made, the requesting party *must* furnish a copy to every other party" (emphasis added). Not only was it improper for defense counsel to submit undisclosed proposed jury instructions in such a manner, but the filing was made in unexcused violations of the Court's pretrial orders. No justification was ever given for the untimeliness of the filings, and the Court ordered defense counsel to furnish copies of the proposed instructions to the government. This was on the first day of an anticipated one to two-day trial, and these rulings required unexpected and valued time from the Court for review and decision on the morning of trial.

Following the lunch break and before the final juror (the alternate) was sworn and opening arguments were to begin, the government moved to prevent defense counsel from presenting certain facts before the jury because the untimely filings suggested that the defense was likely to raise facts related to those documents. (ECF No. 93 at 109–10). These facts centered around defendant's first deportation in 1996, such as his juvenile status, lack of presence at the deportation hearing, family situation, and the nature of his initial entry into the United States. (*Id*. at 110–11). In response, defense counsel argued that those facts "all go to reasonable doubt as to alienage," and that the failure to allow counsel to present them would be tantamount to preventing defendant from putting on a defense. (*Id*. at 111). This all followed the Court's decision, issued nine months earlier, upholding the legal validity of the 1996 deportation following extensive briefing by the parties. (*see* ECF No. 57).

Based on the defense's numerous violations of deadlines and procedural rules, the obvious surprise and prejudice arising from those violations, the newly disclosed and complex legal issues concerning previously undisclosed instructions on derivative and acquired citizenship, and because a prospective jury prepared for a one to two day trial was now going to be expanded to a trial which would likely take much longer, the Court declared a mistrial to allow time for the parties and the Court to prepare for what this trial was now going to involve.

///

## II. Discussion

### A. Surprise and Prejudice to the Government

It is axiomatic that late filings in all manner of cases prejudice the opposing party, as that party does not have the time that it should have to properly respond. In *Ayala v. County of Imperial*, for instance, the court set a strict deadline of March 15 for the plaintiff to file a motion for leave to amend a complaint. 2017 WL 1062589, at *1, 5 (S.D. Cal. Mar. 21, 2017). Plaintiff's counsel missed that deadline without good cause but then filed the motion after the deadline. The *Ayala* court made the following remarks that the Court believes are equally applicable to the circumstances of this case:

> Defense counsel had every reason to think the Court's scheduling order meant what it said. When March 15 came and went and the Court dismissed the case on March 16, they had every reason to think the case actually was dismissed. They were free to turn their attention to other tasks and to adjust their schedules accordingly. When Plaintiffs' counsel filed their late motion, Defense counsel could not have known for certain what to do. Would the Court accept the late filing? And in case the Court did accept it, should they begin preparing their opposition? And if a filing was due, Plaintiffs' tardiness had eaten up some of their response time; was the deadline still March 29, or would their deadline be extended? With this late and unexplained filing, Plaintiffs' counsel unfairly surprised their opponents and imposed undue burdens on them. Whether this was the result of gamesmanship or merely inexcusable negligence, the result was the same. Plaintiffs' counsel gained an unfair advantage at Defendants' expense.

*Id*. at *5. When the January 3 noon deadline had passed, counsel for the United States had every reason to believe that the documents defense counsel had filed were the only documents that they would file in preparation for trial. Defense counsel then filed two substantive documents – the motion in limine and the new jury instructions (which were sealed from government counsel's view) – well past the deadline and near the close of business on a Friday afternoon. Given that the proposed defense instructions were not delivered to government counsel until ordered by the Court on the morning of trial and that defense counsel untimely filed two "updates" to their exhibit list while jury selection was underway, government counsel would have no way to even know of their existence prior to the commencement of trial. Surprise and prejudice were manifest.

///

///

## B. The Alienage Element and the Derivative Citizenship Defense

Two questions must be answered regarding defendant's proposed defense. First, what must the government prove regarding a defendant's alienage to secure a conviction under 8 U.S.C. §1326(a)? Second, what is the nature of the derivative citizenship and acquired citizenship defense, and what evidence does a defendant need to produce before he is allowed to present that defense to a jury?

To prove that a defendant is guilty of illegal reentry by a previously deported alien, the government must prove six elements beyond a reasonable doubt: (1) the defendant was removed or deported from the United States; (2) the defendant thereafter voluntarily entered the United States; (3) after entering the United States, the defendant knew that he was in the United States and knowingly remained; (4) the defendant was found in the United States without having received permission to return from the Attorney General or Secretary of the Department of Homeland Security; (5) the defendant was an alien at the time of the defendant's entry, and (6) the defendant was free from official restraint when he entered. 9th Cir. Crim. Jury Instr. 9.8 (2019). The crime of illegal reentry is one of general intent – the government does not have to prove that the defendant had the specific intent to illegally reenter the United States without permission. *U.S. v. Ayala*, 35 F.3d 423, 426 (9th Cir. 1994) (holding that the government only needed to demonstrate that the defendant entered the United States "voluntarily"). Stated differently, it is irrelevant whether a defendant knew that he did not have permission to enter the United States when he crossed the border. *U.S. v. Leon-Leon*, 35 F.3d 1428, 1432–33 (9th Cir. 1994). District courts have routinely excluded evidence that would either show an intent or lack thereof to enter the United States without permission. In *Leon-Leon*, for instance, the Ninth Circuit held that the district court properly denied the defendant from introducing evidence that he possessed a green card to show he believed that he was allowed in the United States. *Id*. at 1432. The critical inquiry in these cases is whether the defendant specifically intended to enter free from official restraint. *U.S. v. Castillo-Mendez*, 868 F.3d 830, 838–39 (9th Cir. 2017).

At issue in this case is the fifth element, whereby the government must prove the defendant's alienage, meaning that he is a citizen of another country and not an American citizen.

*U.S. v. Barragan-Cepeda*, 29 F.3d 1378, 1380 (9th Cir. 1994). The government may introduce evidence such as previous §1326(a) convictions and testimony from border patrol agents to prove a defendant's alienage, but an out of court admission by the defendant, standing alone, is insufficient as a matter of law. *U.S. v. Higuera-Llamos*, 574 F.3d 1206, 1210 (9th Cir. 2009). There is no debate, and the government certainly does not argue otherwise, that a defendant is fully entitled to introduce relevant and probative evidence to undermine the government's evidence demonstrating alienage. *See, e.g., U.S. v. Espinoza-Baza*, 647 F.3d 1182, 1187–88 (9th Cir. 2011); *Moses v. Payne*, 555 F.3d 742, 758–59 (9th Cir. 2009); *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002) (noting that defendants have a constitutional right to present a complete defense, but that right does not allow defendants to present every piece of evidence they desire).

One way for a §1326(a) defendant to rebut the alienage element is through a defense known as derivative citizenship. Prior to commencement of trial, there had been absolutely nothing filed by the defense to suggest this case may involve a derivative or acquired citizenship defense. The only suggestion came from the defense's untimely filings. "The general rules for acquiring U.S. citizenship are found in 8 U.S.C. §1401." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 (2017). The concept of derivative citizenship is complex, with many potential avenues for a defendant to prove that he is a citizen of the United States. Part of this complication stems from the fact that this statute has, throughout the years, been amended, reorganized, and has had parts ruled unconstitutional by the United States Supreme Court. For example, under 8 U.S.C. §1401(g), a defendant will be considered a citizen if he can show that one of his parents is an American citizen who, prior to the defendant's birth, was physically present in the United States for not less than five years, at least two of which were after attaining the age of fourteen. *U.S. v. Mayea-Pulido*, 946 F.3d 1055, 1060–61(9th Cir. 2020). A prior version of this provision, which applies to defendants born between 1952 and the amendment of the statute in 1986, had more stringent residency requirements of ten and five years respectively. *Lopez Ramos v. Barr*, 942 F.3d 376, 380, n.7 (7th Cir. 2019). Alternatively, a defendant can show that he is a citizen when he was born in an "outlying possession" of the United States of parents, at least one of whom is citizen, who has been physically present in the United States or in an outlying possession for at least one year

7

prior to the defendant's birth. 8 U.S.C. §1401(e). In addition to these examples, the operative statute contains several other methods for a defendant to prove he has derivative citizenship.

Contrary to defense counsel's representations in court and in briefing, a defendant under prosecution for illegal reentry does not have an unfettered right to present a derivative citizenship defense. It is not uncommon for district courts to prohibit defendants from presenting such a defense when it does not have any basis in fact. Nor is it uncommon for courts to prohibit defendants from introducing irrelevant or non-probative evidence regarding their alienage status. Cases highlighted by the government illustrate these points.

In *U.S. v. Espinoza-Baza*, the defendant attempted to introduce evidence that his maternal grandfather was born in the United States to show that he was an American citizen by way of derivative citizenship. 647 F.3d 1182, 1186 (9th Cir. 2011). The district court prohibited the defendant from introducing this evidence or asserting a derivative citizenship defense:

> Relying on 8 U.S.C. § 1401(g), which sets forth the requirements for derivative citizenship, the district court ruled that Espinoza–Baza could qualify for this defense only if his mother had been a United States citizen and had resided in the United States for at least ten years prior to Espinoza–Baza's birth (with at least five years of residency after she reached age fourteen). Because Espinoza–Baza did not introduce evidence linking his grandfather's alleged citizenship with these requirements, the district court concluded that this proffer, to the extent it was relevant at all, was of very minimal probative value. The district court therefore ruled, pursuant to Federal Rule of Evidence 403, that consideration of this evidence by the jury unnecessarily risked confusion of the issues and could have resulted in a verdict based upon mere speculation.

*Id*. at 1186–87. On appeal, the Ninth Circuit upheld the district court's evidentiary rulings. The court noted that under Supreme Court precedent, the Federal Rules of Evidence give trial courts discretion to exclude evidence that is irrelevant, lacking in foundation, or has minimal probative value outweighed by other factors such as unfair prejudice, confusions of the issues, or potential to mislead the jury. *Id*. at 1188 (citing *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006)). While the Ninth Circuit noted that the defendant's proffered testimony was relevant to his derivative citizenship defense, it was not probative because he failed to produce any evidence that he met all the elements of §1401(g). *Id*. at 1189. For example, the defendant did not provide any evidence that his grandfather had spent any significant time in the United States or that his mother had ever

8

entered the United States prior to his birth. *Id*. at 1190. The district court properly excluded the evidence under Federal Rule of Evidence 403 because "if admitted, [it] would have created a substantial risk of confusion and that it might have caused the jury to base its verdict on highly speculative evidence rather than [the defendant]'s guilt or innocence." *Id*. The court concluded by stating that while criminal defendants do not face any burden regarding the issue of derivative citizenship, " 'well-established rules of evidence' can still trump that right when the probative value of the defendant's evidence 'is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.' " *Id*. at 1191 (quoting *Holmes*, 547 U.S. at 326.

The defendant in *Espinoza-Baza* also objected to the district court's refusal to issue a derivative citizenship jury instruction. 647 F.3d at 1191. Noting that a district court does not need to instruct the jury on defense theories that lack a factual foundation in the evidence, the Ninth Circuit held that to be entitled to a derivative citizenship jury instruction, the defendant needs to present more than a mere "scintilla of evidence" that he qualifies for derivative citizenship. *Id*. (citing *U.S. v. Gomez–Osorio*, 957 F.2d 636, 642 (9th Cir. 1992)). As detailed above, it was clear that he had not made such a showing. The Ninth Circuit reached the same conclusion in an unpublished decision, *U.S. v. Ibarra-Flores*, a case that involved one of the defense attorneys who is a member of defendant's legal representation in this case. 586 Fed. App'x. 330 (9th Cir. 2014) (unpublished). The defense was obviously fully aware of this defense long before the pretrial deadlines were set by the Court.

In *U.S. v. Ibarra*,[1] the Ninth Circuit ruled on two issues relevant to the case at bar. First, the Ninth Circuit held that the district court correctly prohibited the defendant from introducing evidence on the issue of alienage, specifically his prior legal status and the fact that his mother, wife, and children were American citizens. 3 F.3d 1333, 1334 (9th Cir. 1993). The court ruled that such evidence was inadmissible because it was not probative as to whether he was an alien when he was found in the United States by law enforcement. *Id*. at 1135. In doing so, the court noted

---

[1] *Ibarra* had also stood for the proposition that the legality of a prior deportation was an element of a §1326 offense. This portion of the ruling was overruled by later cases, most notably by *U.S. v. Alvarado-Delgado*, 98 F.3d 492 (9th Cir. 1996). *Ibarra*'s other holdings were unaffected by *Alvarado-Delgado*.

that while defendants certainly have the right to contest the alienage element, "it does not give the defendant the right to introduce irrelevant evidence." *Id*. The court continued, "[a] defendant can present evidence to rebut the government's showing of alienage but the defendant must at least make an offer of proof and have probative evidence to establish a triable issue of alienage before the evidence can be presented to the jury." *Id*. The second issue concerned the defendant's attempts to relitigate the legality of his prior deportation, which the district court had already ruled was lawful in a lengthy decision months before trial. *Id*. The Ninth Circuit ruled that "where the district court has previously determined that the prior deportation was valid, such evidence can be excluded on the ground that it is irrelevant or would mislead the jury." *Id*. at 1336.

Based on *Ibarra*, *Espinoza-Baza*, and other operative Ninth Circuit authority, if defendant wishes to present a derivative citizenship defense to the jury, he must, at a minimum, (1) identify the specific theory under 8 U.S.C. §1401 he believes he qualifies for, and (2) point to evidence within the record or that will be provided at trial by witnesses he believes will satisfy every requirement of that theory. It remains unclear under what theory of derivative citizenship defendant seeks to pursue at trial because in the memorandum the Court ordered defendant to file, there is no identification of any specific theory. Instead, the defense attempts to change the narrative by arguing that defendant must be allowed to challenge the alienage element and that the defense has no obligation to reveal its theory of defense to the government. (ECF No. 94 at 2–3). Neither point is at issue here and neither are responsive to the Court's briefing request.

Although the Court has not held its evidentiary hearing to determine if there is a sufficient factual basis to allow defendant to present certain facts to the jury, defendant's untimely and undisclosed proposed "acquired citizenship" jury instruction is improper as a matter of law. (ECF No. 82 at 5). That instruction states, in relevant part, "[a] person is a natural-born United States citizen if he is a person of unknown parentage found in the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in the United States." (*Id*.). This instruction reflects one method to acquire derivative citizenship as codified in 8 U.S.C. §1401(f), sometimes known as "foundling" citizenship. There is no legal basis whatsoever for the issuance of this jury instruction. Defendant has three prior convictions for

10

illegal reentry in the District of Nevada alone. On October 15, 1999, defendant pleaded guilty to illegal reentry before the Honorable David Hagen, and he was sentenced to time served.[2] On June 25, 2001, defendant pleaded guilty to illegal reentry once more before Judge Hagen, and he was sentenced to thirteen months in prison.[3] Finally, on January 23, 2004, defendant made his third appearance before Judge Hagen and pleaded guilty to his third unlawful reentry offense.[4] It should be noted that defendant was still on supervised release for his second unlawful reentry when he committed the third illegal reentry, and he was sentenced by Judge Hagen to fourteen months incarceration for the supervised release violation.

As part of all three guilty pleas, defendant necessarily had to admit, under oath, the truth of each element of the offense which, as discussed thoroughly above, includes the element of alienage. Given that defendant was under the age of twenty-one when he first pleaded guilty to illegal reentry in 1999, it was definitively "shown," as a matter of law, that he was not born in the United States by his twenty-first birthday. Even if defendant could present sufficient facts at the evidentiary hearing to show that he is of unknown parentage and was first found in the United States under the age of five, he cannot avoid the consequences of his 1999 guilty plea. It would be improper for a defendant to reap the benefits that accompany a guilty plea in federal court (namely a reduction to his sentencing guideline range or leniency from the government) but then change course and pretend that his guilty pleas do not exist when their presence is harmful to him.

The Court will withhold ruling on whether defendant may introduce facts concerning his 1996 deportation hearing until after the evidentiary hearing currently scheduled for February 5, 2020. These facts include defendant's age when the removal proceeding was initiated against him, his age when he first entered the United States, and whether his mother was present at his deportation hearing. As the Court views the record today, given that defendant has no legitimate reason to challenge the lawfulness of his 1996 deportation order, the facts surrounding that order appear to be irrelevant and not probative of any of the six elements the government must prove

---

[2] Case No. 3:99-cr-00077-DWH-PHA
[3] Case No. 3:01-cr-00066-DWH-RAM
[4] Case No. 3:03-cr-00005-DWH-VPC

beyond a reasonable doubt. *See U.S. v. Alvarado-Delgado*, 98 F.3d 492, 493 (9th Cir. 1996) (holding that the lawfulness of a prior deportation is not an element of a §1326 offense).

### C. Defendant's Motion to Dismiss

Following the filing of his memorandum on the propriety of his alienage defense, defendant filed a motion to dismiss the indictment with prejudice based on double jeopardy grounds. (ECF No. 96). He argues that the Court's reasons for declaring a mistrial were improper, which he believes were: (1) the defense failed to disclose its theory of defense jury instructions before the Court's deadline; (2) the defense failed to disclose its theory of defense to the government ahead of trial; (3) the Court believed it had already ruled on the issue of the defendant's alienage. (ECF No. 96 at 9–10). As an initial matter, defendant's attempts to mischaracterize why the Court declared a mistrial and downplay his defense counsel's conduct are spurious and ineffective. The Court's declaration of a mistrial was premised solely on the defense's late filings, which included a motion in limine, proposed jury instructions, and exhibit lists. At no time was defense counsel ever required to disclose their theory of the case to the government or the Court. All that was required of defense counsel was to file proposed instructions and an exhibit list by noon on January 3, 2020 in compliance with the Court's pretrial order (ECF No. 65).

In a jury trial, jeopardy attaches to a defendant when the jury is empaneled and sworn in. *Illinois v. Somerville*, 410 U.S. 458, 466 (1973). In particular, criminal defendants have a right to have the first jury empaneled try to reach a verdict. *U.S. v. Bates*, 917 F.2d 388, 392 (9th Cir. 1990). When a defendant objects to the court declaring a mistrial after jeopardy has attached, a second trial is barred unless the government can demonstrate that the mistrial was declared out of "manifest necessity." *Arizona v. Washington*, 434 U.S. 497, 506 (1978). In *Bates*, the Ninth Circuit listed four factors to consider when determining if the district court abused its discretion in declaring a mistrial: (1) whether the trial judge heard the opinions of the parties about the propriety of the mistrial; (2) whether the trial judge considered the alternatives and chose the one least harmful to a defendant's rights; (3) whether the court acted deliberately instead of abruptly, and (4) whether the court properly determined that the defendant would benefit from the declaration of a mistrial. 917 F.2d at 396. The Court will examine these factors in turn.

### 1. The Parties' Opportunity to be Heard

Following the Court's declaration that it was declaring a mistrial, the Court asked both parties if there were any objections to the Court's decision. (ECF No. 93 at 115). The government did not object, but defendant did. (*Id.*) Defense counsel Frey made a short statement to the Court, indicating that he believed the record he made earlier was sufficient to demonstrate that a mistrial was not warranted. (*Id.*) He also incorporated by reference the untimely memorandum to seal he submitted along with the untimely proposed defense jury instructions. (*Id.*) Defendant states that the "extent of the discussion" was that the government did not object but he did. (ECF No. 96 at 19). A review of the transcript indicates that defendant was given a full opportunity to respond to the Court's decision and voice the specifics of his objection. At no point did the Court cut defendant short or deny him a full opportunity to explain the reasoning behind his objection. Defendant cannot now complain about the brevity of the discussion had between his counsel and the Court when his counsel chose to incorporate arguments by reference and only give a brief explanation of his objection.

### 2. Alternatives to a Mistrial

During the Court's discussion with defense counsel, the Court offered to proceed with trial if defense counsel waived any objection to the government's objection. (ECF No. 93 at 116). Defense counsel declined. Defendant asserts that the Court's offer was the only alternative considered by the Court, but defendant is mistaken. The Court considered three other alternatives that, for various reasons, were not practical or fair solutions to the surprise and uncertainty presented by the defense's late filings.

First, the Court could have sent the jurors home to allow for expedited briefing and oral argument. The obvious problem with this approach is that the jurors were selected based on the expectation that they would be available for trial January 6 and 7. At best, expedited briefing would have sent the jurors home until days later, pushing the trial well beyond the approximate two-day trial frame presented during jury selection. It is reasonable to assume that at least a handful of the selected jurors would not have been able to return later in the week or at whatever later date the Court selected. Moreover, the Court had already committed to only having one alternate juror for

13

the anticipated two-day trial and that juror had not even been sworn yet. The Court is always cognizant and respectful that jury duty, to varying degrees, inconveniences every citizen called to serve. While some inconvenience is unavoidable, it should not be a product of clear attorney misconduct as it was here.

Second, the Court could have allowed the defense to raise the disputed facts, such as defendant's age and nature of the prior deportation proceeding, in opening arguments and on cross examination of government witnesses (as defendant admits he has no witnesses to present)[5]. Then, prior to closing arguments, the Court could have ruled on whether there was a sufficient factual basis for the defense to present a derivative citizenship instruction to the jury. The issue with this alternative is, once again, obvious – had the Court determined that there was insufficient evidence for such an instruction, the defense would have spent most of the trial presenting and attempting to present irrelevant, nonprobative, confusing and highly prejudicial evidence to the jury.

Third, the Court considered striking the defense's untimely filings and prohibiting the defense from presenting any documents that were not listed in the only exhibit list defense counsel filed on time. Although severe, administering an evidentiary sanction to a criminal defendant because of his counsel's behavior is not unconstitutional. In *Taylor v. Illinois*, the Supreme Court upheld a state trial judge's decision to exclude a key defense witness from testifying because the defendant's attorney failed to timely disclose the witness in pretrial discovery. 484 U.S. 400 (1988). There, the Supreme Court stated that it is entirely proper for a court to sanction a defendant for his attorney's discovery violation when that violation is "willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence." *Id*. at 416. In this case, however, the Court believed it would have been unjust to sanction defendant by excluding what was represented by his counsel as his "only defense" because his attorneys believed that they were exempt from following the orders and rules of the Court.

///

///

---

[5] (ECF No. 110 at 7).

### 3. Whether the Court Acted Deliberately Instead of Abruptly

Defendant argues that the Court's decision to declare a mistrial "was abrupt and without thoughtful consideration." (ECF No. 96 at 20). He further states that the "actions taken by the Court…do not demonstrate a deliberate effort to resolve any apparent issues." (*Id*. at 21). He argues that any prejudice to the government "was remedied once the defense turned over the alienage jury instructions to the government." (*Id*.) Defendant is incorrect on all accounts.

The Court was concerned with defense counsels' conduct and the consequences of their behavior from the beginning of the trial day. Before the prospective jurors were first brought into the courtroom, the Court ruled on some of defendant's untimely motions. (ECF No. 93 at 2). In doing so, the Court noted that it was very concerning that defense counsel filed untimely proposed instructions ex parte and under seal, especially after implying to the Court at calendar call that the jury instructions would be joint and no issues were anticipated in the lead up to trial. (*Id*. at 11; ECF No. 101 at 3–4). The Court also stated how its pretrial order requires the parties to meet and review proposed instructions, which plainly did not happen here with the government being taken by complete surprise (on the morning of trial) by the previously sealed defense instructions. (ECF No. 93 at 11). It cannot be said that prejudice to the government was "remedied" once defense counsel, under court order, turned over proposed defense instructions that should have been disclosed three days earlier. The fact is that trial was now underway on the first day of a two-day trial, and government counsel had lost roughly two and a half days before trial that they otherwise would have had to review and prepare for the proposed defense instructions had they been filed and served before the Court's deadline.

Exacerbating the prejudice to government counsel and the Court, defense counsel had also filed not one but two "updated" and untimely exhibit lists, the first of which substantially revised the second exhibit list defense counsel had timely filed the previous Friday. (ECF Nos. 89, 90). It was based off these "updated" lists and the surprise suggested by the sealed instructions that the government raised an objection to information that it believed the defense would raise during the oncoming opening arguments. (ECF No. 93 at 109). Following defendant's response, it became clear to the Court that there were major factual and legal issues that needed to be resolved prior to

a jury hearing arguments or evidence. The Court had not encountered a proffered derivative citizenship defense before in a §1326 illegal reentry case, and the Court was placed in a position where it did not have sufficient time to conduct needed research to make informed findings and rulings. Moreover, as previously mentioned, the jury had already been selected based upon the mistaken impression caused by the defense that this would only be a one to two-day trial.

### 4. Defendant's Benefit

In response to the government's objection to arguments defendant intended to raise during opening arguments, defense counsel repeatedly argued that if the Court precluded them from introducing evidence relating to defendant's 1996 deportation proceeding, defendant would have "no defense" to the charge. (ECF No. 93 at 113–114). Defense counsel also stated numerous times that the failure to allow the argument would result in reversal on appeal. (*Id*.) Notwithstanding the claimed importance of the intended defense, counsel had carefully concealed such a disclosure in all its timely pretrial filings.

Still, the Court declared a mistrial rather than bar the proposed evidence. By declaring a mistrial, the Court allowed defendant to save, in the words of his counsel, his "entire defense" by demonstrating that there was a sufficient factual and legal basis to present it to the jury. (ECF No. 93 at 112). Based on the record before the Court at that moment, it was unclear how any evidence relating to defendant's 1996 deportation was relevant to his current case – especially because the Court had previously ruled that his 1996 deportation was lawful. The Court was similarly unconvinced by defense counsel's repeated admonitions that the failure to allow their arguments would result in reversal on appeal. (*Id*. at 114). Yet, it was patently clear that the intended surprises by the defense would require briefing by government counsel and meaningful consideration by the Court.

By filing this motion to dismiss, defense counsel is attempting to have it both ways. Counsel claims that evidence related to defendant's 1996 deportation is defendant's sole defense, but they objected to the only way (because of their own misconduct) that they could save the defense. Had the Court ruled on the spot that defendant was prohibited from introducing the facts surrounding the 1996 deportation proceeding (as a sanction based on his attorneys' conduct or

because it lacked factual or legal support), he would have had a ready-made issue on appeal if he was convicted. But if the Court decided to give him a fair opportunity to demonstrate why his defense was appropriate through a delay via a mistrial, he would object to the mistrial. The same scenario presented itself in *U.S. v. Elliot*, 463 F.3d 858 (9th Cir. 2006). There, it became known to the court that the defendant's attorney previously represented a key defense witness in connection with the charges the defendant was on trial for. *Id*. at 861. The district court gave the defendant the option of waiving the conflict, but he refused to do so. *Id*. The district court then declared a mistrial, to which the defendant objected; he would argue on appeal that there was no conflict of interest between his defense counsel despite refusing to waive any conflict at trial. *Id*. The Ninth Circuit upheld the district court's decision, noting that the defendant was attempting to "have it both ways." *Id*. at 867. In doing so, it stated that " '[w]e should be aware of the trial court's prospects of being 'whip-sawed' by assertions of error no matter which way it rules.' " *Id*. (quoting *Thomas v. Municipal Court of Antelope Valley Judicial Dist. of California*, 878 F.2d 285, 290 (9th Cir. 1989)).

Had defense counsel been forthcoming with the Court and government counsel regarding their intent to introduce a "derivative citizenship" or "foundling" defense and related evidence at calendar call or even in its timely pretrial filings, the Court would have ordered expedited briefing so that the matter would have been resolved prior to trial. Or, had defense counsel filed the exhibit list they intended to use by the January 3rd deadline, the government would have been able to object prior to the start of jury selection. At that time, the Court would have had the option of excusing the potential jurors and ordering expedited briefing. Instead, defense counsel waited until the very last possible minute to disclose the exhibit list they intended to use at trial. This resulted in the Court and counsel wasting half a day canvassing prospective jurors, who, in turn, had their time wasted by the needless surprises created by the defense.

An opinion written by Judge Bruce M. Selya of the First Circuit illustrates the problems with defense counsel's conduct here. In *Chappee v. Vose*, defense counsel did not disclose any witnesses planned to be called by the deadline imposed by the trial court. 843 F.2d 25, 27 (1st Cir. 1988). But after the government's expert witness testified, defense counsel sought to have three

expert rebuttal witnesses (who had been sitting in the courtroom) testify. *Id*. The state court prohibited the defendant from using those witnesses as a sanction for the failure to disclose. *Id*. The First Circuit denied the petitioner habeas relief; he had objected to the state court sanctioning him for his attorney's misconduct by prohibiting him from calling the three proposed witnesses. In doing so, Judge Selya, writing for the unanimous court, made the following remarks:

> It is likewise clear that this. . .was a case in which the defendant could have satisfied the applicable discovery rules with ease. This was not a situation where the defense had no way of knowing until midnight loomed of the existence of a witness or the need for certain testimony. In this matter. . .the "truth-determining function" of the trial process was grievously at risk. . .determining the truth is a complicated business, and its achievement can be thwarted as easily by "springing" surprise testimony on an unsuspecting opponent—especially surprise testimony of a highly technical nature—as by presenting perjured testimony.

*Id*. at 30–31 (citations omitted). The Court recognizes that defense counsel's behavior here is not as egregious as the conduct of the defense attorney in *Chappee*. But it is certainly in the same ballpark. In the Court's view, the intent is identical – gain a tactical advantage over the government by improperly withholding documents and motions until a time where the government cannot fairly respond. The government was forced to spend the weekend preparing responses to the defense's motions instead of preparing for trial, and there was no time for the Court to issue a written ruling prior to trial starting on Monday morning. In all criminal cases, defense attorneys are obliged to zealously represent their clients because they face the harshest punishments a citizen can face – loss of property, liberty, or even life. But as the Supreme Court noted in *Nix v. Whiteside*:

> In [*Strickland v. Washington*], we recognized counsel's duty of loyalty and his "overarching duty to advocate the defendant's cause." Plainly, that duty is limited to legitimate, lawful conduct compatible with the very nature of a trial as a search for truth.

475 U.S. 157, 166 (1986) (citations omitted). The conduct of defense counsel here is incompatible with the purpose of the federal trial as a "search for the truth."

In defendant's motion to vacate the Court's evidentiary hearing, defense counsel appears to assert that it was proper for them to file two untimely exhibit lists while the Court was in session because the lists "merely identified exhibits that were already contained within [defendant]'s A-file." (ECF No. 105 at 3). As counsel well know, defendant's A-file contains several hundred pages

of documents, most of which are irrelevant to this proceeding. A party cannot submit such a voluminous file as one exhibit when it intends to only use a select few documents from that file, the sole purpose being gamesmanship. And a party certainly cannot file "dummy" exhibit lists with the sole purpose of tricking or confusing the opposition, withholding the real exhibit list until such a time where the opposition does not have a fair opportunity to carefully review it. The government provided a complete exhibit list to defense counsel within the Court's deadlines; defense counsel's proffered excuse does not explain why they could not do the same. The defense motion to vacate the evidentiary hearing is therefore denied.

### III. Conclusion

IT IS THEREFORE ORDERED that defendant Eric Romero-Lobato's motion to dismiss (ECF No. 96) and motion to vacate the evidentiary hearing (ECF No. 105) are **DENIED**. Defendant's motion for an early ruling on his motion to dismiss (ECF No. 109) is **DENIED AS MOOT**. If defendant, however, files a notice of appeal from this order before the evidentiary hearing scheduled for February 5, 2020, then the Court will vacate that hearing as well as the scheduled February 11, 2020 trial date pending decision on defendant's appeal to the Ninth Circuit.

IT IS SO ORDERED.

DATED this 4th day of February 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE